## Union Gas & Oil Company v. Fyffe, et al.

### Same v. Skaggs.

(Decided May 3, 1927.)

## Appeals from Johnson Circuit Court.

1. Mines and Minerals.—Where one giving gas lease shows that lessee failed to fully develop the property as contemplated, and satisfactorily shows that additional wells necessary to develop it would have produced gas required to entitle lessee to compensation, lessee may recover as damages the sums which he would have received had the land been fully developed.

2. Mines and Minerals.—Lessor of tract of land for gas purposes may not compel the drilling of gas wells thereon, where it would be prejudicial to other lessors of land for gas purposes in the same field.

3. Mines and Minerals.—Where a sufficient number of gas wells have been drilled to reasonably supply the demand for gas and to take all of the gas from the field within a reasonable time, lessors cannot require additional wells to be drilled.

4. Mines and Minerals.—The rights of all lessors or property owners within a gas field must be considered as affecting lessor's right to drilling of additional gas wells, and a fair degree of equality between them should be had in the drilling operations.

5. Mines and Minerals.—In determining whether property has been reasonably developed under gas lease, court must consider whether lessor has been fairly treated when other development in territory is considered, cost of development, fair return on money, and whether all gas is being produced which can be reasonably marketed so as to yield a fair return on money.

6. Mines and Minerals.—Lessor held not entitled to recover damages for failure to drill additional gas wells on tract alleged by lessee to contain 81.8 acres, and on which two producing gas wells had been drilled.

7. Mines and Minerals.—Where lessee, under gas lease, had drilled no well on a tract of land alleged by it to contain 12.2 acres, which did not adjoin a larger tract under lease between parties for gas purposes, lessor held entitled to damages for failure to drill one

well on this tract within a reasonable time after notice demanding further development of property.

E. L. McDONALD and HOLT, DUNCAN & HOLT for appellant.

S. S. WILLIS and WHEELER & WHEELER for appellees.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming.

These two appeals are heard together, but will be disposed of in the same opinion separately.

The appellee, Fyffe, filed his petition in the Johnson circuit court, in which he alleged the ownership of two tracts of land in said county. The two tracts are not contiguous. It is alleged that one of the tracts contains 125 acres, and that the other contains 15 acres. In 1916 he executed an oil and gas lease on these two tracts of land to one A. C. Albin, by the terms of which the said Albin was given the exclusive right to explore for oil and gas on said property, and to operate the property for the purpose of taking out oil and gas, if any should be discovered. By the terms of the lease, as it is alleged in the petition, the lessor was to have one-eighth of all the oil produced and saved from the premises, and, if gas was found in sufficient quantities to transport, the lessee agreed to pay the lessor $100.00 annually for each gas well from which gas was transported. The lessee was to commence a well within twelve months from the date of the lease, or to pay at the rate of 10 cents per acre for each year drilling was delayed. It is alleged that in 1917 the said Albin transferred and assigned the said lease to the appellant, Union Gas & Oil Company, and that the appellant accepted said lease, and paid the rentals thereon until about the year 1920, when a well was drilled on the larger boundary described in the petition, and gas was discovered in paying quantities; that the appellant thereupon paid the plaintiff $100.00 for said one well, but refused to further develop the property until in the latter part of July, 1922. The appellee served upon appellant a notice demanding that it proceed to further develop the property by drilling additional wells until the farm was fully developed. The appellee, so it is alleged, gave heed to the notice, and soon thereafter drilled another well on the larger tract, which produced gas in paying quantities, but refused to drill more than one additional well. The appellee again gave notice in October, 1922, which he had served upon

the appellant requiring it to drill additional wells, and to continue drilling operations until the property was fully developed. But the apppellant failed and refused to give heed to his second notice, and two wells only have been drilled on the larger tract described in the petition, and no well has been drilled on the smaller tract. It is further alleged that there is an implied covenant growing out of the lease contract that the appellant would drill and operate on said two tracts of land such number of wells as would ordinarily be required for the production of all the gas and oil contained therein and thereunder, and such a number of wells as would afford ordinary production to the limits of said land so as to prevent damage to appellee by reason of drainage through wells on adjacent lands. It is then alleged in the petition that there are many active and flowing gas wells not on the lands of appellee, but in the vicinity, which are withdrawing the gas from the field, and to a large extent draining the natural gas contained in appellee's land; that gas is of a fugitive, fugacious, and fleeting nature, and does not remain in one place; and that, unless said gas is withdrawn, it will be entirely lost through adjoining lands which are under operation by the appellant.

It is alleged in the petition that the appellee had been damaged by reason of appellant's refusal to drill at least one well on the 15-acre tract, and five additional wells on the 125-acre tract, and that these wells should have been drilled five years before the institution of the suit, and that, by reason of the failure of the appellant to drill the one well on the smaller tract, appellee had been damaged $500.00, and, by reason of its failure to drill five additional wells on the larger tract, he had been damaged $2,000.00, and he prays for a recovery against the appellee in the sum of $2,500.00.

It will be seen that the basis of the action is that the property has not been fully developed as contemplated by the terms of the lease, and that appellee has not received the compensation which he would have received if additional wells had been drilled, and they had produced gas in paying quantities.

The answer controverts the material allegations in the petition. It alleges that, instead of their being 125 acres in the larger tract described in the lease, actual survey had shown that the tract contained only 81.8 acres, and that, instead of their being 15 acres in the smaller tract, there were only 12.2, as shown by actual

survey. It is denied that the lease has not been fully developed, and it is affirmatively pleaded that the two producing wells drilled on the larger tract were a sufficient number of wells to fully develop the property and produce all the marketable gas contained in and under the land, and that the said two wells were sufficient to prevent damage to the plaintiff by reason of drainage through wells on adjacent lands. The answer then alleged that the first well drilled on appellee's land is within 220 feet of the nearest well in operation on the Lyon tract adjacent, and that the second well drilled on appellee's land is within 560 feet of the next nearest well on adjacent lands which is on the Young lease. All other wells, as is alleged in the answer, are further away from the lands described in the lease.

In a second paragraph of the answer appellant alleged that one gas well would produce all the marketable gas from at least 33 1/3 acres, or that three wells would fully develop 100 acres, and, admitting that the two wells which had been drilled on the property of appellee did not fully develop the lands, it is alleged appellant had offered to pay appellee at the rate of $4.00 per acre on the excess of 44 acres, or $176.00 per annum, but the appellee refused to accept this offer. The answer continues its affirmative allegations by stating that in that gas field it was the custom or policy not to drill more than one well for each 25 acres.

The appellee by reply denied all of the affirmative allegations in the answer, and the issues were thus completed.

There is such a difference between the usual leases relating to the production of oil and the usual leases relating to the production of gas that it is doubtful whether the decisions of this court relating to the royalty in oil have any bearing on the compensation provided for in the ordinary lease relating to gas wells. When oil is found in paying quantities, the lessor receives his compensation from the proceeds of the sale of the oil; that is, he is usually entitled to one-eighth of the gross income from the sale of the oil, and naturally the amount of oil produced determines his compensation. This is not so in relation to the production of gas where the compensation of the lessor depends on the number of producing gas wells on the property. The lessor has no interest in the gas, and his compensation is the same whether much or little gas is produced as long as the well produces gas

in paying quantities.   It may be there is no good reason for the distinction, but it exists nevertheless, and has become well recognized and established.   There is a further difference in that gas and oil are different one from the other in their nature, or at least such is supposed to be true.   It is better established that gas is fugacious, fugitive, and migratory than it is that oil possesses such characteristics.

It appears from the record that this case came on for trial in September, 1925, and that a jury heard at least a part of the evidence, when the appellant moved the court to allow it to withdraw certain allegations in its answer.   The allegations which it proposed to withdraw were those wherein it was alleged that one gas well would fully develop 33 1/3 acres of land, and that appellant had offered to pay appellee $4.00 per acre for 44 acres which it considered undeveloped.   The court sustained this motion, and these allegations with their related allegations were withdrawn.   The appellee then moved to discharge the jury and continue the case, which motion was also sustained, and by agreement the case was transferred to equity for hearing.   There is no objection or exception in the record to the order of the court allowing the appellant to withdraw the allegations in its answer, and therefore these allegations must be treated as if they had never been made.   We are not called upon to determine the correctness of the ruling of the court on the motion.

Proof was taken by depositions, and the court found that one additional well should have been drilled on the larger tract, and that for the failure to so drill it the appellee was entitled to recover $300.00, and that one well should have been drilled on the smaller tract, and for the failure to drill it the appellee was entitled to recover $300.00, and accordingly rendered judgment in favor of appellee for $600.00.   This judgment was without prejudice to the right of appellee to collect damages accruing after the year beginning on July 31, 1927.

The first question that must be determined is whether the property of appellee has been fully developed, and that must be ascertained from the evidence produced in this case.   Every such case depends upon the facts as developed in the particular case.   If appellant failed to develop the property as contemplated by the terms of the lease, appellee would be entitled to recover damages at the rate of $100.00 annually from the

time the well should have been drilled, provided it can be satisfactorily shown that any additional wells necessary to develop the property would have produced gas, as required by the terms of the lease.   In the event it is shown that such a lease has not been fully developed, damages are recoverable, but there are many elements which must be taken into consideration.   When there are a number of producing leases contiguous, and where wells are producing gas from such leases, which wells will eventually drain the entire territory, a question arises which is difficult of solution.   It cannot be held that one of the lessors can compel the drilling of wells to the prejudice of other lessors in the same gas field. If such should be adopted as the rule, that is, that the appellee in this case, for instance, can compel the appellant to drill as many gas wells on his property as will produce gas while no wells are being drilled on the other properties within the territory, then the other property owners who would be affected thereby have good grounds to prevent the drilling of such wells to their prejudice. It may be said that the other lessors have an equal right to compel the drilling of wells on their land, but, if they should exercise that right, if they have it, the whole business would be destroyed, and the result would be disastrous to all the lessors within the entire field.   The operating company would be compelled to expend unnecessarily large sums of money with the certainty of never having it returned.   Market conditions and the demand for gas would enter into the matter as a large factor.   It would be unreasonable and unjust to hold that the operating company should be compelled to drill wells for no purpose other than to enable the lessor to receive his $100.00 annually for each well.

The whole territory producing gas must be taken into consideration, and there should be a fair degree of equality in the drilling operations.   As long as one company only is operating within the field, the matter may be fairly taken care of, but, if rival companies should be developing the same field, each trying to obtain more than his fair share of the gas which could be taken from the territory, confusion and disaster would be the result. It might be that the rights of the different lessors could be protected by injunction if one lessor should be given a preference or an advantage over the others.   It appears from proof in this record that the number of wells which would eventually take out all of the gas within the

territory may be approximated. It may be that it is unsound in the practical operations of gas wells and the development of gas fields, but it seems to us that, if a sufficient number of wells have been drilled to reasonably supply the demand for gas, and which will within a reasonable time take all the gas from the field, nothing more can be required. But in the drilling of such wells the rights of all the lessors or property owners within the territory must be taken into consideration. It seems reasonable to us that, if one gas well would take out all of the gas within ten years, ten gas wells might take it out in one year, and, if one gas well only should be drilled on a tract of land, in such a case the lessor would receive his $1,000.00 in ten years, whereas, if ten wells should be drilled on the same tract, he would receive his $1,000.00 in one year. We see no other difference in the operation so far as the lessor is concerned, but there would be a great difference so far as the lessee is concerned. If one well can be drilled for $3,000.00, and the gas from it can be marketed through a period of ten years, a fair income may result to the operator, but, if ten wells must be drilled in one year at a cost of $30,000.00, and the gas is exhausted at the end of one year, it appears to us that the business of producing gas would be exceedingly hazardous.

Under the terms of his lease contract appellant was entitled to have his properties reasonably developed, and to determine whether his property has been so developed it is necessary to consider whether he has been fairly treated when his particular development is considered in relation to the other development in the territory, and as to whether there has been sufficient development within the territory it is necessary to take into consideration the cost of development, the fair return on the money which the operator must put into the development, and these things will be largely determined by whether the operator is producing all the gas from the territory which he could reasonably market under conditions which would yield a fair return on his money.

A consideration of this record convinces us that no injustice has been done to appellee so far as his larger tract is concerned, and therefore no damage has resulted to him.

As to his small tract a different question arises. It does not adjoin his larger tract. The two wells which have been drilled on his larger tract do not satisfy the

duty that appellant owes to him to develop the smaller tract. We have reached the conclusion that the lower court was correct in holding that he was entitled to have one well drilled on the smaller tract within a reasonable time after he gave notice demanding the further development of his property, and that he may recover at the rate of $100.00 annually since the date that said well should have been drilled.

The facts touching the M. L. Skaggs lease are substantially the same as those relating to the larger tract of appellee, Fyffe. What has been said disposes of his case. He was not entitled to recover damages on the record as made. Skaggs appears to have appealed from the judgment of the lower court, and by an order of this court was allowed to prosecute his appeal on the record filed in the Fyffe case. At the time his appeal was taken the Union Gas & Oil Company had filed the record in his case and had moved this court to grant an appeal, as the judgment in his case was less than $300.00. The appeal of Skaggs is treated as a cross-appeal.

Judgment in case of Union Gas & Oil Company against S. H. Fyffe is reversed, and cause remanded for proceedings consistent with this opinion. The motion for an appeal by the Union Gas & Oil Company from the judgment obtained against it by M. L. Skaggs is sustained, and the appeal granted and the judgment is reversed and the cause remanded. On the cross-appeal of M. L. Skaggs the judgment is affirmed.